SEBRING, Justice.
The plaintiffs below, who are teachers in the public schools of Duval County, Florida, have appealed from a summary final decree purporting to declare their full rights to teachers’ salaries under Chapters 28115, F.S.A. § 282.01 and 28139, F.S.A. § 236.07(3), Laws of Florida 1953.
So far as material here, Chapter 28115, Laws of Florida 1953, known as the 1953 General Appropriations Act, provides in Item 16 thereof as follows:
“g. Minimum Foundation Program—
Public Schools:
1. Participation Under Current Law $55,600,000.00 $113,523,345.00
2. Provision for $350 Teacher pay raise (Payable at the rate of $350 per annum per instructional unit; Provided, however, that county teacher salary schedules shall provide at least a $350 annual increase from State funds over salary schedules for the previous year) . 8,300,000.00 16,957,150.00
* * * * * * * * *
The funds appropriated herein shall be expended in accordance with Chapter 236, Florida Statutes, as amended * *
*441 Chapter 28139, Laws of Florida 1953, the companion statute involved, is an act which amends subsection (3) of section 236.07, Florida Statutes 1951, F.S.A., by increasing in the sum of $350 annually the several respective amounts set up therein which serve as a base for determining salaries of teachers, according to rank, under the Minimum Foundation Program.
In the complaint filed in the court below, the plaintiffs aver, in effect, that the School Board of Duval County has received and retained the full amount of state funds provided by paragraph “g” of Item 16 of the 1953 General Appropriations Act and that consequently the teachers of Duval County have a vested right, for the school term 1953-54, to receive the same salaries from combined state and county funds that they received under the salary schedules adopted by the Duval County School Board for the school term 1952-53, plus a raise of $350 from the state funds made available in paragraph “g,” Item 16; that the Board has refused to grant the raise to which the teachers are thus entitled but instead has taken county funds which should have been used to provide such salary increases and has diverted such funds to other school purposes.
In the answer filed to the complaint the Board admits, in effect, that it has received the state moneys provided by the 1953 General Appropriations Act, and has not increased the pay of teachers under the salary schedules adopted for the school term 1952-53, but avers that even though no salary increases have been granted all state funds received under the provisions of the appropriations act have been expended by the Board on teachers’ salaries and consequently there has been a complete compliance with the réquirements of the law. The Board also sets forth in its answer, in detail, the procedure followed by it in arriving at the budget for the expenditure of school funds from all sources, federal, state and county, for the year 1953-54, and alleges that the budget thus prepared was accepted and approved by the Duval County Budget Commission and the State Superintendent of Public Instruction and, therefore, that the budget was binding on the teachers in the county school system.
After the answer was filed the cause came on for hearing on the motion of the plaintiffs for the entry of a summary final decree on the complaint and answer; the ground of the motion being that the answer was insufficient as a defense to the claim asserted by the plaintiffs. At the hearing, the trial court accepted the theory of the defense interposed by the Board in its answer, and ruled, in effect, among other things, that when the Board provided, in the 1953-54 budget approved by the County Budget Commission and the State Superintendent of Public Instruction, that all state funds available under the Minimum Foundation Act, as amended by the 1953 General Appropriations Act, should be used for the payment of teachers’ salaries, the requirements of the proviso contained in sub-paragraph 2, paragraph “g,” Item 16 of the General Appropriations Act, had been met; even though no provision had been made in the 1953-54 budget for an increase in teachers’ salaries over those which had obtained under the salary schedule adopted for the previous year.
The basic question on the appeal is whether or not, on the pleadings and exhibits, the final summary decree in favor of the defendant is warranted.
As we understand the provisions of the Florida School Code, the Foundation Program Fund was created to give state aid and assistance to the respective counties in the operation of the public schools. It was established in recognition of the fact that public education is not alone the responsibility of the respective counties but that the state should share in the burden as well. It is composed of state moneys, and consequently the state may place any reasonable condition or limitation upon its availability that is not unlawful. Savage v. Board of Public Instruction, 101 Fla. 1362, 133 So. 341; State v. Board of Pub. Instr. for Dade County, 126 Fla. 142, 170 So. 602.
In the 1953 General Appropriations Act the legislature appropriated the sum of $113,523,345 for the biennium to assist the *442 counties in maintaining the minimum foundation program “Under Current Law.” It also appropriated an additional sum of $16,-957,150 for the period “for $350 Teacher pay raise * * * Payable at the rate of $350 per annum per instructional unit * * * ” on condition “that county teacher salary schedules shall provide at least a $350 annual increase from State funds over salary schedules for the previous year * * *. ” It required that the state moneys thus appropriated in aid of the county school programs should be “expended in accordance with Chapter 236, Florida Statutes, as amended * * and, in the amendment to Chapter 236, Florida Statutes, it provided, in its $350 increase of the several respective amounts theretofore included in Chapter 236 for apportionment purposes, “that nothing contained herein shall prevent each teacher employed in the public school system of the State of Florida from receiving the full amount of Three Hundred and Fifty ($350.00) Dollars yearly raise granted to said teachers in the 1953 State Appropriations Bill.” (Emphasis supplied.)
From all this we think it quite plain that as to the $16,957,150 item in the 1953 Appropriations Act, it was never the intention of the legislature that these state moneys were being made available by the state to the respective counties merely to supplant county funds that had theretofore been applied to the payment of teachers’ salaries; but, contrariwise, that the legislative intent, as to such funds, was that they were to become available to and expendable by the respective counties, proportionately, only in the event the counties were willing to maintain teacher salary schedules payable from county school funds other than the fund mentioned above at the same level as had been in force for the previous year, so as to effect, by means of the increased state appropriations, a $350 raise for teachers “over salary schedules for the previous year.” A consideration of the purpose of this statutory provision and the nature of the condition imposed — that salary schedules (which constitute one step in the school budget process controlled by law) “shall provide [an] increase” — would indicate, however, that such a duty imposed by law, as in the case of contractual conditions, “would be discharged * * * by facts making performance impossibleand in that event it was not the intention of the-legislature that the right to participate in the appropriation be forfeited. Cf. Corbin on Contracts (1951), Vol. 6, section 1324; Williston, Rev.Ed., section 805.
We understand from the limited record before us that Duval County is applying all of the state money derived from the conditional appropriation to the payment of teachers’ salaries, but that even with the-use of these funds for this purpose the salary schedules still remain virtually the same as they were for the 1952-53 school term. If the allegations of the complaint in this respect are true, we think that they call for the introduction of evidence on the part of the County to prove that there has been a substantial compliance with the conditions necessary to entitle the county to participate in the provisory appropriation made by the legislature.
Although the decree in this case contains no budgetary analysis or findings of fact in respect to the specific reasons for non-availability of funds for the purpose of maintaining county contribution to teachers’ salaries, there may be facts which, if established by competent evidence, might be sufficient to demonstrate that the Board, to the extent of its ability, is substantially complying with the provisions of the appropriation bill and companion statute and consequently is entitled to the state funds involved.
As is made plain by the controlling statutes, the county current school fund is derived from a great many sources other than those provided by sections 8, 9 and 10 of Article XII of the Florida Constitution, F.S.A. To be more explicit, the county current school fund, that is, the county school fund currently available for any particular fiscal year, comprises not only the funds derived by virtue of the provisions of sections 8, 9 *443 ■and 10 of Article XII but also all funds derived “from appropriations by county commissioners, from any and all other distinctly county sources for school purposes, from national forest funds, from gifts and other ■sources from which funds may be used for the general support of the county school ■system.” See sections 236.24, 236.27 and 236.28, Florida Statutes 1953, F.S.A. Manifestly, some of the funds mentioned in the •quotation above may be available to a county for a specific current year and yet not be available in other years. The extent of the availability or non-availability of certain of these funds in any particular year may be the decisive factor in the determination of the issue whether or not, for such fiscal year, a school board has substantially •complied with the provisions of the law that makes additional state moneys available for teachers’ salaries. For this reason we think that the entry of a summary final judgment on the pleadings without the benefit of evidence was premature, and was to that extent erroneous. Accordingly, the case .should be remanded for submission of ■proofs on this dominant issue, and for a determination anew as to whether all neces.sary or proper parties are before the court. It is suggested that at the hearing evidence be submitted as to the meaning of the term “salary schedules” as used in the School Code; for nowhere in the statute does this term appear to be defined, and it may be that a full understanding of the meaning, scope and operation of the term will have some bearing on the ultimate determination of the issues involved.
We have examined and considered the appellants’ assignments of error directed to other findings contained in the trial court’s decree and find them to be without merit.
Accordingly, the decree appealed from should be affirmed in part and reversed in part with directions that further proceedings be had in the court below in accordance with the principles set forth in this opinion.
It is so ordered.
MATHEWS, C. J., and HOBSON and ROBERTS, JJ., concur.
TERRELL, THOMAS and DREW, JJ., dissent.